IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 8:06CR115 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| | ) | |
| GENE A. BOEKA, | ) | |
| | ) | |
| Defendant. | ) | |

I.   BACKGROUND

Defendant Gene Boeka is before the court for sentencing. Boeka entered a plea of guilty to a charge of bank robbery in violation of 18 U.S.C. § 2113(a). Filing No. 23. There is no plea agreement involved in the case. A Presentence Investigation Report ("PSR") has been prepared by the United States Office of Probation ("the probation office"). See Filing No. 36, PSR (sealed).

The facts related in the PSR show that Boeka robbed the Bank of the West in Omaha by placing a brown paper bag on the counter in front of a teller and handing her a note indicating that it was a bomb. He left the bag and note on the counter after the robbery, and the Omaha Police Department bomb squad later determined that the bag contained a box of Cheez-Its crackers and some wires instead of a bomb. Videotaped surveillance of a nearby grocery store and anonymous "crime-stoppers" calls led investigators to Boeka.

In the PSR, the probation office assigns Boeka a base offense level of 20 under U.S.S.G. § 2B3.1. It adds a two-level increase pursuant to U.S.S.G. § 2B3.1(b)(1) because the property of a financial institution was taken. The probation office further assesses a

three-level increase for brandishing or possessing a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(E). It then subtracts three levels for acceptance of responsibility, resulting in a total offense level of 22. Boeka has no criminal history points, placing him in criminal history category I. At that offense level and category, Boeka's Guidelines sentencing range as set forth in the PSR is 41-51 months.

The government adopts the PSR. Mr. Boeka seeks a downward departure under U.S.S.G. §§ 5H1.6 (for extraordinary family circumstances), 5K2.13 (for diminished capacity), and 5K2.20 (for aberrant behavior), and also seeks a variance from the advisory guideline range pursuant to 18 U.S.C. § 3553(a). The government concedes that Mr. Boeka's family circumstances are extraordinary. It does not oppose a downward departure for extraordinary family circumstances, but objects to the extent of the departure Boeka seeks. It opposes any departure for aberrant behavior or diminished capacity. The government argues for a sentence of 38 months.

A sentencing hearing was held on November 17, 2006. Boeka has submitted a sentencing notebook and short and long versions of a sentencing DVD in connection with his sentencing. See Filing No. 34, Exhibit List, Exs. 101 (Exhibit Notebook); Ex. 104 (50-minute DVD); Ex. 105 (30-minute DVD). The government has no objection to the exhibits. The court has reviewed the evidence and makes the following findings.

Defendant Gene Boeka and his wife, Tamara, have four children: eleven-year-old triplets and a ten-year-old son. Gene Boeka also has two grown children form a previous marriage. The Boeka's son, eleven-year-old Zachary, is significantly disabled with spastic quadriparetic cerebral palsy. He is wheelchair-bound, cannot communicate, and is unable to do anything for himself. He is entirely dependent on caregivers, generally his parents,

for all activities of daily life, including feeding, positioning, and toileting. Zachary is also mentally handicapped and suffers from seizures. He has a cerebral shunt to drain accumulated fluid from his brain. Zachary has had 39 surgeries to date. He has severe scoliosis that will require a major spinal fusion operation in the near future. The surgery is medically necessary and presents a significant risk of mortality. The surgery will require a lengthy period of hospitalization. The record shows that Zachary's care involves numerous doctor visits and hospitalizations. Last summer, Zachary was hospitalized for nine-and-a-half weeks. Zachary's hospitalizations and doctor's appointments affect the entire family, because a family member must be at the hospital at all times with Zachary.

Gene Boeka is Zachary's primary caregiver. The evidence shows that Gene Boeka's presence is critical to Zachary's well-being. He is the only family member who can lift Zachary. Zachary cannot move on his own and must be carried up and down stairs and lifted out of his wheelchair for daily activities such as bathing and diapering. At present, the only bathroom in the Boeka's home is located on the second floor. Mrs. Boeka is employed full-time as a teacher and is not able to provide round-the-clock care for Zachary.

Zachary's teacher, Mrs. Kalkowski, testified at the hearing. Zachary attends school from 8:30 a.m. to 2:30 p.m. during the school year. Zachary is frequently absent as a result of illness or problems with his shunt. Mrs. Kalkowski testified that it takes three adults to lift or carry Zachary at school. She also stated that, although Zachary is unable to communicate, he is aware of the world around him. She characterized Zachary as very bright and testified that he works on academics with the aid of a communication device. He receives physical therapy at school. He must be moved and repositioned regularly because he is in pain if left in one position.

Mrs. Kalkowski also testified that Zachary is dependent upon his father. Zachary and his father have a close emotional bond. Emotional stress manifests itself in physical symptoms when Zachary is separated from his father. When Gene Boeka was incarcerated after being charged with this offense, Zachary experienced changes in bodily functions, with frequent crying and an inability to concentrate. Mrs. Kalkowski testified that she is concerned for Zachary's physical well-being if separated from his father because Zachary's health is extremely fragile. Zachary has had fifty procedures to revise or adjust his shunt. When the shunt needs adjustment, Zachary is especially tired and experiences tightness in his muscles and increased spasticity.

The evidence also shows that Mr. Boeka was employed for 25 years as a teacher and coach. He was respected by his supervisors, peers, and students. He left the teaching profession because he was unable to support his family on the salary he made teaching. He has attempted to pursue a career in insurance sales, but has not been successful in that endeavor.

A psychiatric evaluation shows that Boeka suffers from Major Depressive Disorder and Anxiety Disorder. At the time of the bank robbery, Boeka "knew the difference between right and wrong and the potential consequences of his behaviors," but was "unable to prevent himself from robbing the bank." See Ex. 101, Psychiatric Evaluation. The report states:

> A combination of his Major Depressive Disorder, and his Anxiety Disorder, with obsessive thoughts, led to somewhat delusional thinking and a lack of concern for his own well-being. Indeed, there is even a hint that this robbery may have involved thoughts of suicide by police. He was significantly impaired and clearly committable at the time of the alleged crime.

*Id.* Boeka has undergone counseling since the robbery. His counselor concludes that Boeka had overwhelming stress and isolating depression for many years. *Id.*

4

The Boeka family's financial condition was precarious at the time of the robbery. The record shows that Boeka was unable to pay his family's bills and was on the verge of eviction. The Boekas' vehicles, including a specially-equipped van in which to transport Zachary, were in danger of being repossessed. Boeka's checking account was $1,200 overdrawn as a result of $1,400 in overdraft charges that were assessed by his bank in the three-week period preceding the robbery. Boeka had not told his wife the extent of the family's financial problems. The Boekas declared bankruptcy several years ago when they experienced financial problems as a result of their inability to sell their home in Central City after moving to Omaha. The day before the robbery, Boeka had been turned down for employment. The evidence shows that Boeka applied all but $140 of the proceeds of the robbery to his outstanding bills.

Acknowledging that departures for extraordinary family circumstances are not favored under the Guidelines, the probation office recommended a sentence of 15 months. See Filing No. 37 Sentencing Recommendation (sealed). Boeka argues for a sentence of time-served and an extended period of probation. The government contends that a downward departure of 25 percent from the low end of the Guidelines range, to a sentence of approximately 38 months, would be an appropriate sentence.

II.  DISCUSSION

Under *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are no longer mandatory; "[i]nstead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Gall,* 446 F.3d 884, 888 (8th Cir. 2006). After *Booker,* there are essentially three steps to determining an appropriate sentence: first, the sentencing court should determine the applicable Guidelines range without consideration of any Guidelines departure factors;

5

second, the court, where appropriate, should consider the departure provisions in the Guidelines to determine the resulting Guideline range; and third, the court should consider the other statutory sentencing factors set forth 18 U.S.C. § 3553 to determine whether to impose the Guidelines sentence, as ascertained in the prior steps, or a nonguidelines sentence driven by the other statutory considerations. *United States v. Sitting Bear,* 436 F.3d 929, 934-35 (8th Cir. 2006). The appropriate sentencing range under the Guidelines remains an important sentencing factor. *United States v. Haack,* 403 F.3d 997, 1002–03 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005); *see also United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005) (stating that the Guidelines range is the critical starting point in imposing a sentence).

In considering a Guidelines departure at step two of the sentencing procedure, a district court must decide whether the Sentencing Commission has forbidden, encouraged, or discouraged a departure based on a certain feature. *Koon v. United States,* 518 U.S. 81, 95-96 (1996); U.S.S.G. §§ 5H1.10 (prohibiting consideration of race, sex, national origin, or creed); 5K2.1-23 (enumerating encouraged factors); 5H1.6 (discouraging consideration of family ties and responsibilities). If the special factor is an encouraged factor, the court is authorized to depart if the guideline applicable to the offense does not already take it into account. *United States v. Lightall*, 389 F.3d 791, 796 (8th Cir. 2004). Discouraged factors can be the basis for a departure "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Lightall,* 389 F.3d at 796; *United States v. Hadash,* 408 F.3d 1080, 1083 (8th Cir. 2005) (holding, post-*Booker*, that a district court can depart without abusing its discretion if the case falls outside the heartland of cases in the guideline at issue). Departures are also appropriate "if the sentencing court finds that there exists an

6

aggravating or mitigating circumstance 'of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.'" *United States v. Chase,* 451 F.3d 474, 482 (8th Cir. 2006) (*quoting* U.S.S.G. § 5K2.0).

The Guidelines provide that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. However, family ties and responsibilities may be a ground for departure when extraordinary circumstances are present such that the case lies outside the heartland of cases covered by the Guidelines. *United States v. Bueno,* 443 F.3d 1017, 1023 (8th Cir. 2006); U.S.S.G. Pt. 5H, intro. comment. (noting that such considerations "may be relevant . . . in exceptional cases"); *see also United States v. Spero,* 382 F.3d 803, 804-805 (8th Cir. 2004) (affirming eight-level departure in a case involving an offender responsible for care of disabled son); *United States v. Haversat,* 22 F.3d 790, 797 (8th Cir. 1994) (finding a departure was warranted because the defendant's wife suffered severe, potentially life-threatening psychiatric problems and the defendant was an irreplaceable part of her treatment plan).

Under U.S.S.G. § 5K2.13, a downward departure is permitted if the defendant committed the offense while suffering from a significantly reduced mental capacity, and the significantly reduced mental capacity contributed substantially to the commission of the offense. *United States v. Mark,* 425 F. 3d 505, 506 (8th Cir. 2005). "The Sentencing Commission has defined 'significantly reduced mental capacity' to mean that 'the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason;

or (B) control behavior that the defendant knows is wrongful.'" *Id.* at 506-07 (*quoting* U.S.S.G. § 5K2.13, comment. (n.1)). The defendant has the burden of proving by a preponderance of evidence that his "diminished capacity comprised a contributing factor in the commission of the offense." *United States v. Ruklick,* 919 F.2d 95, 98-99 (8th Cir. 1990) (noting that "proof amounting to but-for causation" is not required). Departures for diminished capacity are not authorized, however, "if (1) the defendant's reduced capacity was caused by the voluntary use of drugs or intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the defendant's offense involved actual violence or a serious threat of violence, or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public, or the defendant was convicted of [one of several enmumerated offenses involving child pornography]." U.S.S.G. § 5K2.1.

To be entitled for a downward departure due to aberrant behavior under U.S.S.G. § 5K2.20, the offense must have been a single criminal occurrence or transaction that was committed without significant planning, was of limited duration, and represented a marked deviation by the defendant from an otherwise law-abiding life. U.S.S.G. § 5K2.20, cmt. n.1; *United States v. Bueno,* 443 F.3d 1017, 1023 (8th Cir. 2006). "The offense must have been more than something out of the defendant's character; it must have been a spontaneous and thoughtless act." *Id.*; *but see* U.S.S.G. App. C, Vol. II (Nov. 2003) (noting that a Guidelines amendment in 2000 defines and describes "aberrant behavior" more flexibly than the interpretation of then-existing Guidelines language that allowed departure for aberrant behavior only in cases involving a single act that was spontaneous and seemingly thoughtless and stating that the former approach was "overly restrictive and may

8

preclude departures for aberrant behavior in circumstances in which such a departure might be warranted).″

A district court may not grant an aberrant behavior departure if the defendant "discharged a firearm or otherwise used a firearm or a dangerous weapon." U.S.S.G. § 5K2.20(c)(2), p.s. "When the Sentencing Commission created the aberrant behavior guideline, it specifically limited the circumstances in which it can be used." *United States v. Roberts,* 313 F.3d 1050, 1054 (8th Cir. 2002) (noting that the guideline itself rules out its application to offenses involving use of a firearm or other dangerous weapon). For purposes of a downward departure for aberrant behavior, "dangerous weapon," "firearm," and "otherwise used" have the same meaning given those terms in U.S.S.G. §§ 5K2.20(c)(2), p.s.; comment. (n.1); 1B1.1, comment. (n.1(D)(G), & (I)); "'Dangerous weapon' means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." U.S.S.G. § 1B1.1, comment. (n.1(D)). "Otherwise used" with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon. U.S.S.G. § 1B1.1, comment. (n.1(I)).

In determining whether the court should depart on the basis of aberrant behavior, the Guidelines indicate that "the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D)

motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." U.S.S.G. § 5K2.20, comment. (n.3).

Once the district court calculates the advisory Guidelines range, including departures, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)." *United States v. Gall,* 446 F.3d at 889 (8th Cir. 2006) (*quoting Booker*, 543 U.S. at 245-46 (2005)). The statutory concerns expressed in Section 3553(a) require the sentencing court to "'impose a sentence sufficient, but not greater than necessary,' to comply with sentencing goals considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." *United States v. Pappas,* 452 F.3d 767, 773 (8th Cir. 2006); *see* 18 U.S.C. § 3553 (a)(2)(A)-(C). The court must also consider the need to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(C)-(D).

A sentence within the Guidelines range is presumptively reasonable, but "it does not follow that a sentence outside the guidelines range is unreasonable." *United States v. Myers,* 439 F.3d 415, 417 (8th Cir. 2006). A defendant may rebut the presumption of reasonableness in certain "highly unusual circumstances." *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006) (stating that "to consider the guidelines is not to be ruled by them"). One of the highly unusual circumstances that will support a nonguidelines sentence is the existence of unwarranted sentence disparities between defendants who have been found guilty of similar conduct. *See United States v. Krutsinger,* 449 F.3d 827,

10

830 (8th Cir. 2006); *United States v. Lazenby,* 439 F.3d 928, 933 (8th Cir. 2006). District courts must vary from the Guidelines range where other Section 3553(a) factors would render a sentence within the Guidelines range unreasonable. *Medearis,* 451 F.3d at 920.

Sentences varying from the Guidelines range are reasonable if the district court offers justification based on the factors in 18 U.S.C. § 3553(a). *United States v. Rogers,* 448 F.3d 1033, 1035 (8th Cir. 2006). Although the court "need not categorically rehearse each factor, 'the further the judge's sentence departs from the guidelines sentence, the more compelling the section 3553(a) justification must be.'" *Id.* (*quoting United States v. Givens,* 443 F.3d 642, 646 (8th Cir. 2006)); *United States v. Lazenby,* 439 F.3d at 932 (stating "[h]ow compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed"); *United States v. Larrabee*, 436 F.3d 890, 892 (8th Cir. 2006) (noting that as the size of a variance from the advisory Guidelines sentence grows, so too must the reasons that warrant it).[1]

Factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors. *United States v. Lazenby*, 439 F.3d at 933. "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines

---

[1] The Eighth Circuit's position that extraordinary variances from a Guidelines sentence must be supported by extraordinary circumstances, *see, e.g, Rogers,* 448 F.3d at 1035, has been called into doubt by the United States Supreme Court's recent grant of certiorari to address the question of whether it is "consistent with *United States v. Booker,* 543 U.S. 220 (2005), to require that a sentence which constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances." *Claiborne v. United States,* No. 06-5618, — S. Ct. —, 2006 WL 2187967 (Nov. 3, 2006). Sentences that vary from the Guidelines sentencing range by over 50 percent have generally been characterized as extraordinary. *See, e.g., Rogers,* 448 F.3d at 1035; *United States v. Meyer,* 452 F.3d 998, 1001 (8th Cir. 2006) (affirming a 50 percent upward variance and holding a variance of 50 percent is extraordinary).

departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006). A defendant with a disabled, dependent son or daughter presents a compelling justification for a variance. *United States v. Wadena,* — F.3d —, —, 2006 WL 3511789, *3 (8th Cir. December 7, 2006).

### III. ANALYSIS

#### A. Guidelines Sentence

The court first finds that Boeka's motion for a downward departure for extraordinary family circumstances should be granted. The government concurs. The evidence shows that Zachary Boeka is completely dependent on Gene Boeka and would be unable to obtain care elsewhere for any significant length of time. A sentence at the low end of the Guidelines range would undoubtedly cause grievous harm to Zachary Boeka. The record shows, however, that the Boeka family has a strong support network and could obtain replacement care for Zachary for a shorter period of time.

The government objects to a departure under U.S.S.G. § 5K2.13 for diminished capacity. It contends the departure is prohibited under the Guidelines if the offense involved violence or a serious threat of violence. The court finds Boeka's offense undoubtedly involved a serious threat of violence. However, the "serious threat of violence" language in section 5K2.13 is limited to situations in which "the facts and circumstances of the defendant's offense indicate a need to protect the public <u>because</u> the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13 (emphasis added). Although the court finds there is virtually no chance that Boeka will re-offend, the court finds a need to protect the public from the type of fear and intimidation associated

with the use of a purported bomb to commit a robbery. Accordingly, the court will sustain the government's objection to defendant's motion for a downward departure under U.S.S.G. § 5K2.13.

Boeka also moves to depart under U.S.S.G. § 2K2.20 for aberrant behavior. A departure on that ground is prohibited under the Guidelines if the defendant discharged or "otherwise used" a firearm or dangerous weapon. Boeka's Cheez-Its-box-disguised-as-a-bomb clearly qualifies as a dangerous weapon under the Guidelines. The question is whether he can be said to have "otherwise used" the weapon so as to prohibit a departure for aberrant behavior.

The phrase "otherwise used" describes behavior at some intermediate level between discharging a weapon and merely brandishing, displaying or possessing it. These definitions are somewhat problematic with reference to a phony bomb. The "bomb" cannot ever be "discharged," i.e., detonated, because it is not real. The weapon's only usefulness to a criminal is that brandishing or displaying the weapon engenders fear and intimidation in victims. Nonetheless, by express terms, the Guidelines provide for such a departure unless something more than brandishing or displaying the purported weapon is demonstrated. Accordingly, the court finds that application of the aberrant behavior departure would not be prohibited in this case if defendant were otherwise entitled to the departure.

Although Boeka's offense was clearly a single act that was a marked deviation from an otherwise law-abiding life, Boeka has not satisfied the requirement that the offense was committed "without significant planning." The evidence shows that the defendant planned the event for at least a day and took several affirmative steps in pursuit of the scheme. He

purchased wire to make the phony bomb appear more realistic and concocted a disguise. These efforts cannot be characterized as insignificant. Accordingly, the government's objection to defendant's motion for a downward departure for aberrant behavior will be sustained.

Defendant further moves for a departure under U.S.S.G. § 5K2.0 because the offense is outside the heartland of cases contemplated under the Guidelines. For the reasons set forth below in connection with the 18 U.S.C. § 3553(a) sentencing factors, the court finds the motion should be granted. The government concedes that Boeka's family situation presents extraordinary family circumstances worthy of a downward departure. The court finds an "outside the heartland" departure is also appropriate in view of the other factors that, combined with Boeka's family circumstances, make this an unusual case that was not contemplated by the Sentencing Commission in formulating the bank robbery guideline.

Having found that a departure is warranted, the court must next determine the extent of the departure. The government suggests in a downward adjustment of 25 percent, to approximately 38 months. That length of time is a reasonable starting point for the court's determination. For the reasons discussed more fully below, the court finds that a downward departure to 12 months and one day is appropriate in this case. Accordingly, the court determines that Boeka's guideline sentence, after departures, is 12 months and one day.

    B.    Section 3553 Sentence

The court also finds that 12 months and one day is a reasonable sentence in consideration of the factors in 18 U.S.C. § 3553(a). If departures were not appropriate

under the Guidelines, the court would impose the same sentence outside the Guidelines system.

In considering the nature and circumstances of the crime, the court notes that bank robbery is, of course, a serious crime. Boeka's method of accomplishing the robbery with use of a phony bomb heightened the fear and intimidation inherent in such an act. The court is particularly cognizant of its duty not to approve of, or encourage, such actions, even in the most dire personal or financial circumstances. On the other hand, the court notes that none of the victims of the robbery suffered any serious, long-term, or permanent effects from the incident. Also, the court has considered that Boeka used the funds obtained in the robbery to fulfill his financial obligations in support of his family. Though this does not justify such conduct, it is a factor to consider in assessing the nature of the offense. Unlike most bank robbers, Boeka did not commit the crime for personal gain.

Consideration of the history and circumstances of the defendant shows that he led an exemplary life up to the time of the robbery. Boeka's conduct until he committed this offense sets a high standard for living a good life. The record shows Boeka is uniformly respected and admired, both in his work and in his life. The evidence also shows that Boeka was under significant and long-standing stress at the time of the robbery because of the combined strain of caring for his disabled child, his desperate financial situation, and his serious mental condition. His mental condition was fragile; there is no doubt that he suffered from major depression and extreme anxiety at the time of the offense. Though his mental condition may not entitle him to a Guidelines departure for diminished capacity, that is not to say it should not be considered in connection with the court's Section 3553(a)

determination. Boeka's family and financial crises undoubtedly affected his emotional well-being and served to lessen his culpability for the offense.

The court cannot consider the characteristics of this defendant without considering the dynamic of his family life. The Boeka family has provided exceptional care to Zachary Boeka. The level of functioning that Zachary has attained, in spite of his profound disability, can largely be attributed to the hard work and dedication of Gene Boeka as Zachary's primary caregiver. The Boekas have provided Zachary with a loving and nurturing family environment.

The court finds that Zachary's physical health and well-being will undoubtedly be affected by any separation from his father. A period of separation of three years would most likely be extremely deleterious, if not fatal, to Zachary's health. In view of the family's extensive support network, however, arrangements for the adequate care of Zachary could be made for some shorter period of time. The court is aware that Boeka's incarceration will be difficult for Zachary and for those called upon to care for him in Gene Boeka's absence, particularly Tamara Boeka. However, incarceration works a hardship on any family and imposes undeserved burdens on the innocent families of all who are convicted of criminal conduct. The evidence presented to the court indicates that incarceration of Gene Boeka for approximately ten-and-a-half months—the length of time he will serve after deduction of credit for good time—will not work an intolerable hardship on his family. This is a length of time in which the family should be able to adequately provide for Zachary's needs with support from family, friends, church groups, and government or private agencies as alternate caregivers.

In imposing this sentence, the court has considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. In connection with this analysis, the court notes that the incremental benefit of a longer sentence would not justify the hardship it would impose on Boeka's family, particularly on Zachary Boeka. Because Gene Boeka has generally been a law-abiding citizen, incarceration of any length of time will have a significant effect on him and will impose just punishment for this offense. The court has also considered the need to promote respect for of the law and finds that the imposition of a sentence of incarceration, as opposed to probation, will satisfy that goal. A sentence of incarceration will deter others inclined to engage in such conduct in a way that a sentence of probation would not. Although the circumstances that drove Boeka to commit this offense were serious and may have appeared insurmountable to Boeka, there are many people in similar financial straits, and many people caring for special-needs children. The court appreciates the necessity of sending a message that bank robbery cannot be regarded as a solution to such problems.

The court finds that there is no need to protect the public from further crimes of this defendant. Defendant has shown the court that he is truly remorseful for his conduct. Defendant has also made efforts to deal with the mental, social, and financial pressures that combined to put him in the position of thinking that robbing a bank or potential suicide were his only options. The evidence shows that Boeka and his family will have the support of numerous friends, family-members, church groups, medical professionals and other organizations in his future endeavors. Any probability of recidivism by this defendant is extremely unlikely.

The court has considered the kinds of sentences available and the sentencing range established under the Guidelines and has imposed a sentence that is in line with a Guidelines sentence after departures. In considering the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, the court notes that this is a highly unusual bank robbery. There are virtually no defendants in the same position as this defendant. Accordingly, the court finds that to impose a sentence commensurate with sentences given to most bank robbers would create an unwarranted disparity. The court has also considered the need to provide restitution to the victims and has ordered restitution.

In assessing the individual circumstances of this crime and this defendant, together with the serious needs of his family and the demanding task of meeting those needs, the court finds a sentence of 12 months and one day is reasonable in this case. A judgment and Commitment and Statement of Reasons will be entered in accordance with this Sentencing Memorandum.

DATED this 20th day of December, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge